**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

DEBRA L. JABBIE,                    :
                                    :
          Plaintiff,                :
                                    :
VS.                                 :
                                    :   5 :10-CV-471 (MTT)
MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,    :
                                    :
          Defendant.                :
_____     :

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on December 7, 2010, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations.   (Doc. 1).   All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007).   The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not

reweigh the evidence or substitute its judgment for that of the Commissioner.   "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."   *Bloodsworth*, 703 F.2d at 1239.   "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."   *Cornelius*, 936 F.2d at 1145-1146.

### Administrative Proceedings

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits on September 21, 2007. (Tr. 107-109).   Her claims were denied initially and upon reconsideration.   (Tr. 67-70, 73-76).   A hearing was held before an Administrative Law Judge ("ALJ") in Macon, Georgia on February 24, 2009.   (Tr. 13, 104).   Thereafter, in a hearing decision dated July 6, 2009, the ALJ determined that Plaintiff was not disabled.   (Tr. 13-27).   The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.   (Tr. 1-3).

### Statement of Facts and Evidence

The Plaintiff was fifty-one (51) years of age at the time of the hearing before the ALJ, and alleged disability since March 17, 2006, due to shoulder, back, neck, and heart problems, chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), and depression. (Tr. 32, 153).   Plaintiff earned her G.E.D., and has past relevant work experience as a cigarette carton inspector, cigarette packing machine operator, and a can filler/tobacco industry. (Tr. 25-26, 32).

As determined by the ALJ, Plaintiff suffers from the following impairments: degenerative disc

2

disease and osteoarthritis of her shoulders.   (Tr. 15).   The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and she remained capable of performing work as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), but with exceptions.   In an 8-hour workday, the claimant can lift/carry 10 pounds frequently and 20 pounds occasionally.   The claimant can also occasionally climb, balance, stoop, kneel or crouch, but should not crawl or climb ladders, ropes or scaffolds.   Additionally, the claimant can reach in all directions, but not above shoulder level bilaterally; the claimant can handle and finger, but should not constantly handle anything over 2 to 3 pounds.   Finally, the claimant must avoid concentrated pulmonary irritants, such as dust, fumes, gases, or cleaning chemicals; the claimant must also avoid extreme temperatures, fixed gaze and production quotas for work.

(Tr. 17).   Although Plaintiff could not return to her past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy. (Tr. 25-27).

## DISCUSSION

Plaintiff alleges that the ALJ erred when he discounted the opinion of the Agency's examining expert, and in his determination of Plaintiff's Residual Functional Capacity ("RFC").   (Doc. 8).

### *Expert Opinion*

Plaintiff maintains that the ALJ erred when he gave little weight to the findings of Dr. William Hutchings, a consultative examiner.

When deciding the evidence, an examining physician is generally entitled to more weight than a non-examining physician, unless good cause is shown.   20 C.F.R. § 404.1527(d)(1); *Davison v. Astrue*, 370 Fed. Appx. 995, 996-97 (11th Cir. 2010); *Shaw v. Astrue*, 392 Fed. Appx. 684, 687 (11th

Cir. 2010). "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Herein, the ALJ afforded little weight to Dr. Hutchings because his opinions were "somewhat conclusory and [were] not supported by the other evidence of record."   (Tr. 22).   Dr. Hutchings performed a consultative examination of Plaintiff in February of 2008, a month after Plaintiff had left shoulder surgery.   Dr. Hutchings found that Plaintiff's right grip was moderately impaired and her left grip was severely impaired.   (Tr. 362).   He also determined that Plaintiff could not push or pull, and her reach was severely impaired post-op on her left shoulder, and mildly impaired on her right shoulder.   (Tr. 362).   Plaintiff could stand on her heels or toes, and while she had a wide based slow gait, her station was normal.   (Tr. 357).   Dr. Hutchings also found that Plaintiff's range of motion was intact, except Plaintiff had limitations in her lumbar spine, left shoulder, and hips. (Tr. 357).   Plaintiff's spirometry exam produced results which were consistent with restrictive lung disease. (Tr. 357).

First, Plaintiff states that the ALJ erred in discrediting Dr. Hutchings's finding that Plaintiff's spirometry exam was consistent with restrictive lung disease.   (Doc. 8).   While Dr. Hutchings's report stated that Plaintiff's test was consistent with restrictive lung disease, during Plaintiff's examination with Dr. Hutchings, Plaintiff's "lungs demonstrated distant breath sounds with no rales or rhonchi.   There were a few scattered wheezes [] present."   (Tr. 357).   Dr. Hutchings did not specifically diagnose Plaintiff with restrictive lung disease, but merely stated that the exam results were consistent with this disease.   (Tr. 357).

The evidence shows that Plaintiff was treated by Dr. Mark Hendricks, a pulmonologist, who

diagnosed Plaintiff with chronic obstructive pulmonary disease (COPD) and obstructive sleep apnea. (Tr. 255, 263).   Throughout 2002-2006, Plaintiff's lungs were essentially clear during her examinations.   (Tr. 253, 254, 255, 258, 260, 262).   Dr. Hendricks did not diagnosis Plaintiff with restrictive lung disease.   When she was examined at the W.T. Anderson Health Center in October 2007 and February 2008, Plaintiff had no complaints of shortness of breath.   (Tr. 375, 377). Further, in February 2009, Dr. Peter Allotey, a general physician, examined Plaintiff and found that Plaintiff's lungs were clear to auscultation bilaterally, and Plaintiff had no wheezes, rhonci, or rales. (Tr. 501).   Accordingly, the ALJ's decision that Dr. Hutchings's opinion regarding Plaintiff's restrictive lung disease was conclusory and not supported by the record is supported by substantial evidence.

Plaintiff also alleges that the ALJ erred in discounting Dr. Hutchings's manipulative and exertional findings.   (Doc. 8).   The evidence shows, however, that approximately three months after Dr. Hutchings's examination, on May 12, 2008, Dr. William Barnes, Plaintiff's orthopedist, noted that Plaintiff had finished physical therapy, and had almost full range of motion in her left shoulder.   (Tr. 429).   In August of 2008, Plaintiff complained to Dr. Barnes that she was not doing as well as she thought she would, but upon physical examination, Dr. Barnes observed good internal rotation and strength.   (Tr. 428).   X-rays from the same day showed "everything to be in good position with minimal degenerative joint changes."   (Tr. 428).   A month later, Dr. Barnes again observed that the range of motion in Plaintiff's left shoulder was adequate "with some limited internal rotation and some weakness in abduction."   (Tr. 427).

At the request of Dr. Barnes, on December 4, 2008, Plaintiff had an MRI and a nerve conduction test.   (Tr. 421).   The results showed the Plaintiff's hand grip strength was normal, and there was no muscle atrophy in her upper extremities.   (Tr. 421).   The findings of the EMG/nerve

5

conduction studies showed normal testing in the upper extremities, "without evidence for peripheral nerve entrapment or cervical radiculopathy."   (Tr. 421).   Plaintiff had a cervical epidural steroid injection on February 9, 2009.   (Tr. 552).   A week after the injection, Plaintiff was seen by Dr. Allotey.   (Tr. 501).   Plaintiff did complain of multiple joint pains.   (Tr. 501).   However, the neurological exam showed that Plaintiff was alert and oriented x3, had a normal gait, and no motor/sensory deficit.   (Tr. 501).   Accordingly, there is substantial evidence to show that the ALJ did not err when he decided not to give Dr. Hutchings's opinion significant weight.

The ALJ determined that Dr. Hutchings's opinion of Plaintiff's limitations was conclusory and inconsistent with the record.   The ALJ clearly articulated his reasoning for not relying on Dr. Hutchings's report, and this decision is supported by substantial evidence.   Thus, the ALJ did not commit reversible error by giving little weight to the findings and opinions of Dr. Hutchings.[1]

### Residual Functional Capacity

Plaintiff states that the ALJ's determination of her RFC was not supported by substantial evidence because the ALJ found Plaintiff to be capable of light work, which is inconsistent with limitations caused by a large bone spur.   (Doc. 8).

A claimant's RFC is "the most [she] can still do despite [her] limitations."   20 C.F.R. § 404.1545(a)(1).   The determination of the RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect her ability to perform

---

1 Plaintiff also included a two sentence argument that the ALJ gave significant weight to the opinions of non-examining state agency evaluators without giving reasons supported by substantial evidence.   The ALJ is not bound by the findings of the State agency evaluators, but "may not ignore these opinions and must explain the weight given to the opinions in their decisions."   SSR 96-6p.   In the decision, the ALJ discussed Plaintiff's medical record and Plaintiff's subjective complaints of pain.   The ALJ then stated that he gave significant weight to the opinion evidence of State agency evaluators, who reviewed the record and found that Plaintiff could perform light work, and had no severe mental limitations.   (Tr. 25).   After outlining the record, the ALJ explained the weight given to the State agency evaluators, and thus, did not err.

work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).    The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).   Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Plaintiff alleges that the ALJ failed to consider the effects of Plaintiff's bone spur when determining her RFC. (Doc. 8).   The evidence shows that in April of 2005, Dr. Peter Holliday, a neurosurgeon, found that Plaintiff had an abnormality of the left occipital condyle.   (Tr. 301).   At that time, Dr. Holliday did not believe this was part of Plaintiff's problem. (Tr. 301).   Plaintiff had a cervical myelogram and CAT scan on March 23, 2007.   (Tr. 292).   Dr. Holliday found that the films "look[ed] good on the sagittal, axial and coronal reconstructions from the foramen magnum to C2." (Tr. 292).   Dr. Holliday noted that "the study did show a large exophytic bone growth from the left occipital condyle which is compressing the left side of the cervicomedullary junction and displacing the left vertebral artery against the cord and brain stem."   (Tr. 292).   Dr. Holliday stated that the bone growth had been present for years, but thought that lifting objects at work aggravated it.   (Tr. 292).

Plaintiff maintains that Dr. Joe Duncan confirmed Dr. Holliday's assessment of Plaintiff's bone growth.   (Doc. 8, p. 12).   In fact, in July of 2006, Dr. Duncan stated that a CT myelogram was reviewed and there was a question of a craniocervical abnormality that was placing a <u>mild</u> amount of pressure on the spinal cord. (Tr. 307).   Dr. Duncan further stated that he wanted Plaintiff to be seen by a neurosurgeon in Atlanta because Dr. Duncan was unsure of the clinical significance of the

abnormality.   (Tr. 307).   Dr. Duncan did not indicate any limitations caused by the bone growth.

Neither Dr. Duncan nor Dr. Holliday stated any specific functional limitations due to the bone growth.   Dr. Holliday thinks that lifting objects aggravated the bone growth.   However, there is no indication Plaintiff is unable to lift ten pounds because of the bone growth.   Furthermore, Plaintiff has failed to identify any evidence which would indicate that the bone growth caused limitations that make Plaintiff unable to perform to her RFC.   *See* 20 C.F.R. § 404.912(c) (the plaintiff must provide evidence which shows the plaintiff has an impairment and how that impairment affects the plaintiff's functioning); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (Plaintiff bears the burden to establish a disability).

Finally, Plaintiff asserts that the ALJ acknowledged the abnormality, but there is no evidence to show that the ALJ considered the limitations caused by the abnormality.   (Doc. 8, p. 13). "When a claimant alleges several impairments, the ALJ has a duty to consider the impairments in combination and determine whether the combined impairments render Plaintiff disabled."   *Sneed v. Barnhart*, 214 Fed. Appx. 883, 887 (11th Cir. 2006) (citing *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)).   The ALJ can satisfy his duty to consider all of the impairments in combination by "stating that he considered whether the claimant suffered from any impairment or combination of impairments."   *Id.*; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (finding that the ALJ's decision stating that the plaintiff did not have an impairment or combination of impairments that met a listed impairment constituted evidence that the ALJ considered the plaintiff's impairments); *Warren v. Astrue*, 2010 WL 3294186,*6 (N.D. Ga. July 14, 2010) ("the Eleventh Circuit has also held that the statement by the ALJ that she considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of [the plaintiff's] impairments"); *Fashaw v. Astrue*, 2011 WL 1237578, *9 (M.D. Fla. Feb. 15, 2011) ("The

Eleventh Circuit has made clear that an ALJ's statements and findings may show a plaintiff's impairments have been considered in combination").

The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]" (Tr. 17).   The ALJ stated that he determined Plaintiff's RFC "[a]fter careful consideration of the entire record," and when determining the RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 17).   The ALJ outlined Plaintiff's medical history, including the bone spur, in his decision. (Tr. 18-24).   Further, beyond his reliance on the medical evidence, the ALJ stated that he relied on two Residual Functional Capacity Assessments, which found Plaintiff had limitations, including her bone spur, yet was still capable of light work.   (Tr. 25, 366-373, 380-387). Thus, the decision by the ALJ provides evidence that he properly considered any limitations that may have been caused by Plaintiff's bone growth when determining her RFC.

The ALJ's assessment of Plaintiff's RFC must be based on all relevant evidence.   20 C.F.R. § 404.1545.   The ALJ's decision provides evidence that shows the ALJ considered Plaintiff's bone spur when assessing Plaintiff's RFC.   Accordingly, the ALJ did not err in his determination of Plaintiff's RFC.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g).   Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this

Recommendation with the Honorable Marc T. Treadwell, United States District Judge, WITHIN

FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

     **SO RECOMMENDED** this 20th day of January, 2012.


                    s/ ***THOMAS Q. LANGSTAFF***

                    **UNITED STATES MAGISTRATE JUDGE**

llf